United States District Court
Southern District of Texas
FILED

DEC 1 2 2005

Michael N. Milby, Clerk

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MAXIMINO MONDRAGON** | § | |
| **aka "EL CHIMINO"** | § | |
| **WALTER ALEXANDER COREA** | § | **CRIMINAL NO.** H-05-468 |
| **OSCAR MONDRAGON** | § | |
| **VICTOR OMAR LOPEZ** | § | |
| **OLGA MONDRAGON** | § | **18 U.S.C. § 371** |
| **MARIA FUENTES** | § | **8 U.S.C. § 1324(a)(1)(A)(v)(I)** |
| **KERIN SILVA, and** | § | |
| **LORENZA REYES-NUÑEZ** | § | |
| **aka "LA COMADRE"** | § | |

# INDICTMENT

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times material herein:

1. MAXIMINO MONDRAGON aka EL CHIMINO (hereinafter, "EL CHIMINO") operated bars and restaurants in Houston, Texas, including EL POTRERO DE CHIMINO BAR, 12026 Hempstead Highway and formerly at

8104-A W. Tidwell Road, and MARGARITA'S RESTAURANT, 12000 Hempstead Highway.

2. WALTER ALEXANDER COREA (hereinafter "COREA") operated bars and restaurants in Houston, Texas, including El CUCO RESTAURANT, 8102 W. Tidwell Road.

3. VICTOR OMAR LOPEZ (hereinafter "OMAR") and OSCAR MONDRAGON (hereinafter "OSCAR") operated MI CABANA SPORTS BAR, 8104-A W. Tidwell Road in Houston, Texas.

4. MARIA FUENTES served as a bartender and bookkeeper for bars and restaurants, including EL POTRERO DE CHIMINO BAR and MARGARITA'S RESTAURANT.

5. OLGA MONDRAGON operated EL HUETAMO NITE CLUB, aka LA LEONA CLUB, 1810 Ojeman Road in Houston, Texas.

6. KERIN SILVA transported the victims in this matter to the conspirators' bars and restaurants.

7. LORENZA REYEZ-NUÑEZ came to and remained in the United States in violation of the law and worked on behalf of EL CHIMINO in the conspirators' bars and restaurants.

8. "B.E.B." is a Salvadoran woman, born in July 1975.

9. "M.V.L." is an Honduran woman born in December 1962.

10. "M.A.L." is an Honduran woman born in March 1967.

11. "R.R.G." is an Honduran woman, born in October 1979.

12. "C.Y.R." is a Nicaraguan woman, born in June 1979.

13. "E.C.C." is a Salvadoran woman, born in November 1984.

14. "E.M.Z." is a Salvadoran woman, born in January 1984.

15. "J.L.O." is a Salvadoran juvenile girl, born in May 1988.

## COUNT ONE
## Servitude/Trafficking Conspiracy
## (18 U.S.C. § 371)

### A. INTRODUCTION

16. The introductory allegations as set forth in paragraphs 1 through 15 are realleged and incorporated as if fully set out herein.

### B. THE CONSPIRACY

17. Beginning in or about 2001, and continuing until on or about November 13, 2005, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**MAXIMINO MONDRAGON, aka "EL CHIMINO",**
**WALTER ALEXANDER COREA,**
**OSCAR MONDRAGON,**
**VICTOR OMAR LOPEZ,**
**OLGA MONDRAGON,**
**MARIA FUENTES,**
**KERIN SILVA,**
**and LORENZA REYES-NUÑEZ, aka "La COMADRE"**

did intentionally and knowingly combine, conspire, confederate, and agree with each

other and with others known and unknown to the Grand Jury to commit offenses against the United States, as follows:

a. to, in violation of Title 18, United States Code, §1581, hold persons in a condition of peonage; and

b. to, in violation of Title 18, United States Code, §1590, knowingly recruit, harbor, transport, provide, and obtain by any means, persons for labor and services in violation of Title 18, United States Code, Chapter 77.

**THE OBJECT**

18. It was the object of the conspiracy to recruit, entice and transport Central American women and girls to the United States, and to make them work in bars located within the Southern District of Texas and elsewhere for the benefit of the conspirators, maintaining their service through threats of force and psychological coercion to effectuate the repayment of a debt.

**MANNER AND MEANS**

19. It was part of the plan and purpose of the conspiracy that one or more of the defendants would routinely recruit women and girls from Central America, (hereinafter "the Central American women and girls") to travel to the United States with the expectation of legitimate jobs in restaurants upon their arrival in the Houston, Texas area.

20. It was a further part of the conspiracy that the conspirators would

smuggle and arrange to smuggle Central American women and girls into the United States for the purpose of holding them in service in the defendants' restaurants and bars.

21. It became part of the conspiracy that conspirators, based on their understanding of an unofficial United States Government "catch and release" policy involving non-Mexican illegal aliens, would direct certain of the Central American women and girls to turn themselves in to immigration officers following their illegal entry into the United States, for the purpose of being released with a Notice to Appear ("NTA") for a future court date. The conspirators would then confiscate the women's and girls' NTA documents, denying the women and girls access to immigration court. These acts resulted in orders of deportation being entered upon the aliens' failure to appear.

22. It was a further part of the conspiracy that the conspirators would indebt the Central American women and girls by assessing a smuggling fee against them ranging from approximately \$6,000 to approximately \$12,500. The conspirators would increase this debt by extending credit to the women and girls for housing, food, clothing, transportation, and money sent home to the families of the women and girls.

23. It was a further part of the conspiracy that the conspirators would require the Central American women and girls to work as "bargirls" in their bars and restaurants until they had repaid, through deductions from their earnings, their debts

to the conspirators. The responsibilities of "bargirls" in the conspirators' service included, but were not limited to, keeping the male patrons of the bars company and encouraging them to buy beer and liquor at high prices, such that the debts of the women and girls would be reduced for each drink that their clients bought.

24. It was a further part of the conspiracy that conspirators would use threats of force to compel and maintain the service of the Central American women and girls until their debts were paid.

25. It was a further part of the conspiracy that, on occasion, conspirators would require certain of the Central American women and girls to submit to sexual activity with male bar patrons and favored business associates.

**OVERT ACTS**

26. In furtherance of the conspiracy and to effect the objects thereof, within the Southern District of Texas and elsewhere, the defendants, together with others known and unknown to the Grand Jury, committed and caused to be committed at least one of the following overt acts, among others:

a. In or about November 2001, in Guatemala, EL CHIMINO and COREA recruited M.V.L. and M.A.L., to illegally travel to the United States with transportation and smuggling fees to be repaid through work in the conspirators' bars.

b. In or about November 2001, COREA arranged the illegal entry into the United States of M.A.L., R.R.G., and M.V.L., and arranged their

transportation from the U.S./Mexican Border to Houston, Texas, to the bars of the conspirators.

c. On or about December 24, 2001, upon the arrival of M.A.L. and R.R.G. in Houston, MARIA FUENTES took M.A.L., R.R.G., and other Central American women to shop for clothing prior to beginning work in the bars, instructing them to buy sexually provocative outfits. The cost of this clothing was added to the women's debt.

d. In or about February 2002, LORENZA REYES-NUÑEZ told EL CHIMINO that M.A.L. was planning to flee before her term of service was completed.

e. In or about February 2002, EL CHIMINO, believing M.A.L. was planning to flee his service, told M.A.L. that he knew where her children lived in Honduras and described her house and the surroundings in detail, placing her in fear for her family's safety.

f. In or about the Summer of 2002, angered that an unidentified bargirl had fled his service without repaying her debt, EL CHIMINO convened a meeting of the women and girls in his nightclub and announced to them that he would burn that woman's house down in retaliation for her escape.

g. In or about July 2002, MARIA FUENTES monitored the activities

of B.E.B., entering the number of drinks that B.E.B. had sold into a ledger to track the progress of B.E.B.'s smuggling debt.

h. In or about September 2002, EL CHIMINO assessed an additional $4,000 debt against B.E.B. because her roommate, "Marlene," had fled his service without permission.

i. In or about April 2004, angered that C.Y.R. had complained about a $1,000 fine he had assessed against her for coming to work late, COREA assaulted C.Y.R. and threatened to harm her child if she were to report the beating to the police.

j. In or about February 2005, OSCAR used promises of a good job in a restaurant to recruit E.M.Z., a Salvadoran woman, to travel illegally to the United States.

k. In or about February 2005, OSCAR used promises of a good job in a restaurant to recruit E.C.C., then a 19 year-old Salvadoran woman, to travel illegally to the United States.

l. In or about May 2005, upon the arrival of E.M.Z. and E.C.C. in the Houston area, OSCAR confiscated the NTAs from E.M.Z. and E.C.C.

m. In or about May 2005, OLGA MONDRAGON ordered E.M.Z. to dance with bar patrons, sit on the men's laps, and be intimate with them.

n. In or about June 2005, OSCAR recruited J.L.O., a Salvadoran girl, to travel illegally to the United States, agreeing that he would pay her smuggling

costs and advising her that she could repay him once she arrived in the United States.

o. On or about June 5, 2005, OSCAR negotiated to sell J.L.O., who he identified as a 17 year-old Salvadoran girl, and E.C.C. to another bar owner for use as bargirls or prostitutes. During this transaction OSCAR reassured the prospective buyer that J.L.O. and E.C.C. were "used to captivity."

p. On or about June 7, 2005, OSCAR and VICTOR OMAR LOPEZ accepted from a person known to the Grand Jury, a down payment of $3,000 for the purchase of J.L.O. and E.C.C., delivery to be made upon the arrival of J.L.O. and E.C.C. in Houston from El Salvador.

q. On or about June 23, 2005, OSCAR took the NTA from J.L.O. following her arrival from the U.S./Mexican Border area.

r. On or about June 23, 2005, OSCAR and VICTOR OMAR LOPEZ sold the debts and bodies of E.C.C. and J.L.O. to a person known to the Grand Jury with the intention that they be used as bargirls or prostitutes.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT TWO

**(8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and (B)(i) - Alien Smuggling Conspiracy )**

### A. INTRODUCTION

27. Paragraphs 1-26 of this indictment, are hereby re-alleged and incorporated by reference as though fully set forth herein.

**B. THE CONSPIRACY**

28. From in or about December 2001 through November 2005, within the Southern District of Texas and elsewhere,

**MAXIMINO MONDRAGON, aka "EL CHIMINO",**
**WALTER ALEXANDER COREA,**
**OSCAR MONDRAGON,**
**VICTOR OMAR LOPEZ,**
**OLGA MONDRAGON,**
**MARIA FUENTES, and**
**KERIN SILVA**

together with others, did knowingly and intentionally conspire to encourage and recruit aliens to enter the United States in violation of law, to bring known aliens into the United States in violation of law, and to harbor and transport such illegal aliens, knowing and in reckless disregard of the fact that such aliens had entered and remained in the United States in violation of law, all for the purpose of commercial advantage and private financial gain.

**All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i); Title 18, United States Code, Sections 3551 et seq.)**

**Notice of Criminal Forfeiture as to Count One**

Pursuant to Title 18, United States Code, Section 1594, the United States gives notice that the defendants MAXIMINO MONDRAGON, aka "EL CHIMINO",

WALTER ALEXANDER COREA, OSCAR MONDRAGON, VICTOR OMAR LOPEZ, OLGA MONDRAGON, MARIA FUENTES, KERIN SILVA and LORENZA REYES-NUÑEZ, aka "La COMADRE" shall forfeit to the United States as a result of the commission of the offense of Title 18, United States Code, Section 1581 or Title 18, United States Code, Section 1590, or conspiracy to violate such offenses:

(1) any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and

(2) any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation, including, but not limited to the following property:

money judgment in the amount of approximately $29,825.50 in United States dollars.

Alternatively, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the United States gives notice that the defendants MAXIMINO MONDRAGON, aka "EL CHIMINO", WALTER ALEXANDER COREA, OSCAR MONDRAGON, VICTOR OMAR LOPEZ, OLGA MONDRAGON, MARIA FUENTES, KERIN SILVA and LORENZA REYES-NUÑEZ, aka "La COMADRE" shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of

Title 18, United States Code, Section 1581 or Title 18, United States Code, Section 1590, and a conspiracy to commit such offenses, including, but not limited to the following property:

money judgment in the amount of approximately $29,825.50 in United States dollars.

In the event that the property that is subject to forfeiture as a result of any act or omission of the defendant:

a. cannot be located upon exercise of due diligence;

b. has been placed beyond the jurisdiction of the Court;

c. has been transferred or sold to, or deposited with a third party;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of such property, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p).

**Notice of Criminal Forfeiture as to Count Two**

Pursuant to Title 18, United States Code, Section 982(a)(6), the United States gives notice that the defendants MAXIMINO MONDRAGON, aka "EL CHIMINO", WALTER ALEXANDER COREA, OSCAR MONDRAGON, VICTOR OMAR

LOPEZ, OLGA MONDRAGON, MARIA FUENTES, and KERIN SILVA shall forfeit to the United States as a result of the commission of the offense of Title 8, United States Code, Section 1324 or conspiracy to violate Title 8, United States Code, Section 1324:

(a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense; and

(b) any property, real or personal–

(1) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and

(2) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense,

including, but not limited to the following property:

money judgment in the amount of approximately $29,825.50 in United States dollars.

In the event that the property that is subject to forfeiture as a result of any act or omission of the defendant:

f. cannot be located upon exercise of due diligence;

b. has been placed beyond the jurisdiction of the Court;

c. has been transferred or sold to, or deposited with a third party;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of such property, pursuant to Title 18, United States Code, Section 982(b)(1) incorporating Title 21, United States Code, Section 853(p).

A TRUE BILL:

[redacted]

FOREPERSON OF THE GRAND JURY

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By: ______________________________
RUBEN R. PEREZ
ASSISTANT UNITED STATES ATTORNEY

______________________________
JOSEPH C. MAGLIOLO
ASSISTANT UNITED STATES ATTORNEY

WAN J. KIM
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

By: ______________________________
JAMES F. FELTE, JR.
TRIAL ATTORNEY

______________________________
LUIS C. DE BACA
TRIAL ATTORNEY